**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

BRABUS GMBH,

                              Plaintiff,

              v.

BOLLINGER MOTORS, LLC,

                              Defendant.

Civil Action No.  3:18-CV-1081 (MAD/DEP)

**JURY TRIAL DEMANDED**

## COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff Brabus GmbH, by and through its undersigned attorneys, brings this action against the defendant Bollinger Motors, LLC.  As grounds for this complaint, Brabus GmbH alleges the following:

### NATURE OF THE ACTION

1.        This is an action for trademark infringement and unfair competition arising under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.* and for trademark infringement, unfair competition, and trademark dilution under the laws of the State of New York and the common law.

### THE PARTIES

2.        Plaintiff Brabus GmbH ("Brabus") is a limited liability company duly organized and existing under the laws of Germany with its principal place of business at Brabus Allee 1, Bottrop, Germany.

3.        Defendant Bollinger Motors, LLC ("Bollinger") is a limited liability company duly organized under the laws of the State of New York with its principal place of business at 60125 State Highway 10, Hobart, New York 13788.

1

## JURISDICTION AND VENUE

4.      This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and subject matter jurisdiction is therefore conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a).

5.      This action also arises under statutory and common law of the State of New York, and supplemental jurisdiction over these related state law claims is conferred upon this Court by 28 U.S.C. § 1367.

6.      Bollinger is a limited liability company organized and existing under the laws of the State of New York, maintains a physical presence in the State of New York, and conducts business operations in the State of New York.

7.      Bollinger has taken, and upon information and belief, will continue to take, actions including those described in this Complaint, in the State of New York and, in particular in this judicial district, that cause injury to Brabus.

8.      At the very least, by virtue of, *inter alia*, Bollinger's contacts with New York, including but not limited to the above-referenced activities and relationships to the State of New York, this Court has personal jurisdiction over Bollinger.

9.      Personal jurisdiction over Bollinger comports with due process.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (a) Bollinger resides in this judicial district, (b) a substantial part of the events or omissions giving rise to Brabus's claims occurred and are occurring in this judicial district, and/or (c) Bollinger is subject to this Court's personal jurisdiction with respect to the instant action.

## FACTS

### *Brabus's Business and Brabus Mark*

11.     For nearly 40 years, Brabus has revolutionized and perfected automobile refinement through manufacturing, tuning, configuring, upgrading and selling cars, supercars,

2

business cars and classic cars.  In addition, it offers aircraft interior and exterior design services, as well as a range of aircraft management services from sourcing and purchasing aircraft to flight operations, charter revenue, crew services, safety, accounting and administration, and more. Furthermore, Brabus sells fashion products, accessories, model cars, home and office products, posters, go-cycles, and tuning parts through its online store.

12.     Much of Brabus's success is owed to its longstanding and consistent use of its trademarks, including its design mark consisting of a stylized letter "B" within a circle ("Brabus 'B' Design Mark"), described in detail below.

13.     Beginning at least as early as September 1998, Brabus adopted the Brabus "B" Design Mark (depicted below) and began using it in interstate commerce in the advertisement, promotion, and sale of its products:



Brabus "B" Design Mark

14.     The Brabus "B" Design Mark consists of a stylized letter "B" within a circle.

15.     Brabus is the owner of U.S. Trademark Registration No. 2,610,469, registered on August 20, 2002, for its Brabus "B" Design Mark for the below listed goods and services:

U.S. Registration No. 2,610,469:

- "Motor vehicle parts, namely, exhaust systems, namely fan-type manifolds, center parts and tail-end silencers and mufflers" in Class 7;

- "Measuring instruments for installation in motor vehicles, namely speedometers, tachometers, ammeters, voltmeters, odometers, magnetic compasses, engine temperature thermometers" in Class 9;

- "Motor vehicles, namely automobiles, motor vehicle parts and accessories therefor, namely, motor vehicles tires and rims, springs, engines for land vehicles, side covering and lateral paneling, tail aprons, seats and head restrains for vehicles; spoiler, shock absorbers, spring struts for motor vehicle chassis, gearshift levers and gearboxes, steering wheels" in Class 12;

- "Sterling silver keyrings, clocks; watches" in Class 14;

- "Leather and imitation leather goods, namely umbrellas, suitcases, travelling trunks and travelling bags, and wallets" in Class 18;

- "Clothing, namely, T-shirts, sweatshirts, pants, jackets, coats, work clothes, namely, overalls and jumpsuits; work shoes; hats, footwear and scarves" in Class 25; and

- "Installation of motor vehicle stereo equipment, cruise controls, vehicle anti-theft alarms, vehicle cellular phones, vehicle computers accessories therefore,; customizing, tuning and detailing of motor vehicles, namely carrying out modifications of the engine, body, wheels and/or interior trim of mass-produced motor vehicles; painting of motor vehicles or parts thereof; installation of interior trim for motor vehicles" in Class 37.

16.    This registration is valid, subsisting, in full force and effect, and incontestable.  A copy of the registration certificate and printout from the United States Patent and Trademark Office's ("USPTO") TSDR database is attached hereto and included as part of **Exhibit A**.

17.    Brabus has continuously used its Brabus "B" Design Mark in commerce in the United States since at least as early as September 1998, in connection with goods and services in Classes 7, 9, 12, 14, 18, and 37, and since at least as early as November 2000, in connection with the goods and services in Class 25.

18.    The Brabus "B" Design Mark is commercially strong, world-renowned, and widely recognized designation of the source of the Brabus's goods and services.

19.     Brabus has promoted and advertised its Brabus "B" Design Mark for motor vehicles, motor vehicle parts, aircraft design and related services, accessories, personal goods and clothing gear through varied promotional and advertising media.

20.     Approximately 80 percent of the business of Brabus in the United States consists of its extensive line of SUV packages for 4x4s, G-wagens, and 6x6 SUVs.

21.     In 2017, Brabus celebrated its 40-year anniversary and a world premiere of the extreme off-roader Brabus 550 Adventure based on the Mercedes G 500 4x4. Brabus Classic received the "Best of Show" award at the Techno Classica 2017 for Mercedes 600 Pullman rebuilt from the ground up.

22.     The Brabus 550 Adventure 4x4 is available for sale as a complete vehicle, and prominently features the Brabus "B" Design Mark as depicted below:



23.     Another example of Brabus's extreme off-roader vehicle is Brabus 900 "One of Ten," which is the world's most powerful twelve-cylinder off-road vehicle.  The vehicle produces 900 horsepower, 1106 lb.-ft. of torque, with a top speed of 168 miles per hour. Likewise, Brabus 900 prominently features the Brabus "B" Design Mark as depicted below:



24.     Brabus 500 and B40-550 are additional example of performance upgrades that Brabus makes available for all current G 500 models, including the 4x4s.  As with the previous examples, Brabus prominently features its Brabus "B" Design Mark on such vehicles, as demonstrated below:



ME1 27599030v.1



25.     Brabus has participated in and advertised its brand and design mark at numerous U.S. tradeshows, including Specialty Equipment Marketing Association (SEMA) and Concours d'Elegance.

26.     Brabus also consistently advertises in print and digital media, including duPont Registry and Super Street magazines, with frequent paid-for editorials and digital e-mail advertisements to duPont Registry and Super Street subscribers.

27.     Brabus brand and design mark, as well as Brabus's innovative product line, are so well know that its participation in the European auto shows draws unsolicited attention from major U.S. auto magazines, such as Road & Track, as recently as March 23, 2018.

28.     Brabus also maintains an active online presence by releasing periodic newsletters to its subscribers and, at least, weekly postings on Brabus's Facebook and Instagram pages, as well as securing advertisements on auto websites, such as Super Street's website.

29.     As a result of Brabus's use and extensive and continuous efforts in promoting the Brabus "B" Design Mark, consumers have come to recognize the Brabus "B" Design Mark as uniquely associated with Brabus and an indication of origin in Brabus, as a consequence of which Brabus has established valuable goodwill and exclusive rights in the Brabus "B" Design Mark.

***Defendant's Infringement of the "B" Design Mark***

ME1 27599030v.1

30.     Bollinger is primarily engaged in manufacturing and/or assembling all-electric sport utility vehicles but also sells clothing apparel, as depicted on its website.  A copy of the landing page of Bollinger's website is attached hereto as **Exhibit B** (https://www.bollingermotors.com/).

31.     According to the representations on Bollinger's website, it is currently accepting reservations for its B1 model of the all-electric sport utility vehicles, and anticipates to accept deposits for such vehicles in the second half of 2018, upon announcement of its suggested retail price.  *Id.*

32.     According to the representations on Bollinger's website, it anticipates that productions of its vehicles will begin in late 2019 with deliveries in 2020.  *Id.*

33.     Bollinger represents that its vehicles can be sold in the United States, Canada, European Union, ECE, Australia, and New Zealand.  *Id.*

34.     On its website, Bollinger also offers for sale and sells various clothing apparel that bears its design mark described below.  *Id.*

35.     On October 3, 2017, Bollinger filed a trademark application with the USPTO, Serial No. 87631934, ("Bollinger Application") seeking to register its below-depicted design of a letter "B" within a circle ("Bollinger "B" Design Mark") in connection with "[e]lectric cars" in Class 12:



Bollinger "B" Design Mark

36.     The Bollinger Application specifies that "[c]olor is not claimed as a feature of the mark.  The mark consists of the letter B within a circle."  A copy of a printout from the USPTO TESS database is attached hereto and included as **Exhibit C**.

37.     Upon information and belief, the Bollinger "B" Design Mark generally does <u>not</u> appear in color on Bollinger's goods, including its vehicles and clothing apparel, as demonstrated by examples below:






38.     Notwithstanding Brabus's rights in its Brabus "B" Design Mark, and without authorization or permission from Brabus, Defendant has adopted the Bollinger "B" Design Mark for use in connection with its goods and services.

39.     The Bollinger "B" Design Mark consists of a letter "B" enclosed in circle.

40.     The Bollinger "B" Design Mark is very similar to the Brabus "B" Design Mark. Both designs comprise of a capital letter "B" within a circle.

41.     Both marks are used in connection with manufacturing sport utility vehicles and branded apparel and are likely to appear in the same and/or similar channels of trade.

42.     Importantly, on January 11, 2018, the UPSTO Examiner refused registration of the Bollinger Application "because of a likelihood of confusion with the mark in U.S. Registration No. 2610469," which is the Brabus "B" Design Mark.  A copy of the printout from the USPTO TSDR database is attached hereto and included as part of **Exhibit D**.

43.     The Examiner further found "the marks are nearly identical in that they consist of the letter B within a circle… consumers familiar with the [Brabus's] mark are likely to be confused as to the source of the goods due to the overall similarities. Thus, the marks are confusingly similar." *Id.*

44.     Bollinger did not submit a response to the Examiner's refusal, and the Bollinger "B" Design Mark was officially abandoned as of July 12, 2018.

### *Defendant's Refusal to Halt Infringing Activity*

45.     On or about June 5, 2018, Brabus, via its counsel, sent written notice to Bollinger of Brabus's concerns regarding Bollinger's use of a very similar mark to the Brabus "B" Design Mark in connection with Bollinger's good and services.

46.     On or about June 20, 2018, Defendant, via its counsel, replied to Brabus's June 5, 2018 communication, stating that it believed that consumer confusion between the Brabus "B" Design Mark and Bollinger "B" Design Mark was unlikely.

47.     Upon information and belief, Defendant has advertised goods bearing the Bollinger "B" Design Mark in interstate commerce, have displayed and advertised products

10

bearing the Bollinger "B" Design Mark online, and continues to display the Bollinger "B" Design Mark online, at a minimum, on its website at https://www.bollingermotors.com.

48.   Upon information and belief, Defendant intends to use the Bollinger "B" Design Mark in connection with motor vehicles (as well as clothing apparel) which will directly compete with Brabus's own products and services.

49.   Bollinger's adoption and use of a design mark that is very similar to Brabus's design mark with actual notice of its infringing conduct and Examiner's refusal of the Bollinger Application based of the finding of likelihood of confusion evidence bad faith on the part of Bollinger.

50.   Bollinger's adoption and use of a design mark that is very similar to Brabus's design mark has created and/or will create consumer confusion with Brabus and its good and services.

51.   Bollinger's adoption and use of a design mark that is very similar to Brabus's design mark has additionally diluted the distinctive character of Brabus's design mark.

52.   The actions of Bollinger present an immediate, imminent risk to Brabus's business, reputation and goodwill.

53.   Brabus will suffer damages and irreparable harm unless the Court enjoins Bollinger from using its infringing design mark.

## COUNT I

### (Trademark Infringement – Lanham Act § 32, 15 U.S.C. § 1114)

54.   The allegations contained in paragraphs 1 through 53 are incorporated herein by reference.

55.     Brabus has continuously and extensively used the Brabus "B" Design Mark since at least as early as September 1998.

56.     Brabus owns a federal trademark registration for the Brabus "B" Design Mark, which registration is valid, subsisting, incontestable and in full force and effect.

57.     Brabus's use and registration of the Brabus "B" Design Mark commenced and occurred prior to Defendant's adoption of the Bollinger "B" Design Mark.

58.     Defendant's adoption of the Bollinger "B" Design Mark for use on and in connection with motor vehicles and branded clothing apparel so resembles Brabus's first-used and registered Brabus "B" Design Mark for closely related goods and services offered within the same and/or similar industry is likely to confuse, mislead, and deceive members of the public into believing that Brabus has allowed, sponsored, approved, or licensed Defendant to provide competing goods and services, or that Defendant is in some way connected to or affiliated with Brabus.

59.     Any such confusion would result in injury or have a direct impact on Brabus's reputation and its ability to market its own products and services under the Brabus "B" Design Mark.  Furthermore, any defect, objection, or fault found with Defendant's products or services would negatively impact and seriously injure the reputation Brabus has established for its high-quality products and services offered under the Brabus "B" Design Mark.

60.     Defendant's activities are being carried out willfully, with actual notice of Brabus's prior rights and registration in and to the Brabus "B" Design Mark.

61.     Defendant is liable for infringement of the federally registered Brabus "B" Design Mark in violation of 15 U.S.C. § 1114.

ME1 27599030v.1

62.    Brabus has been and will continue to be irreparably injured by Defendant's conduct.  Brabus cannot be adequately compensated for these injuries by monetary remedies alone, and Brabus has no adequate remedy at law for Defendant's infringement of its rights.

## COUNT II

### (Unfair Competition – Lanham Act § 43(a), 15 U.S.C. §1125(a))

63.    The allegations contained in paragraphs 1 through 62 are incorporated herein by reference.

64.    Brabus has continuously and extensively used the Brabus "B" Design Mark since at least as early as September 1998.

65.    The Brabus "B" Design Mark is distinctive, commercially strong, and federally registered.

66.    Brabus's use and registration of the Brabus "B" Design Mark commenced and occurred prior to Defendant's adoption of the Bollinger "B" Design Mark.

67.    Defendant's adoption of the Bollinger "B" Design Mark for use on and in connection with motor vehicles and branded clothing apparel so resembles Brabus's first-used and registered Brabus "B" Design Mark for closely related goods and services offered within the same and/or similar  industry is likely to confuse, mislead, and deceive members of the public into believing that Brabus has allowed, sponsored, approved, or licensed Defendant to provide competing goods and services, or that Defendant is in some way connected to or affiliated with Brabus.

68.    Any such confusion would result in injury or have a direct impact on Brabus's reputation and its ability to market its own products and services under the Brabus "B" Design Mark.  Furthermore, any defect, objection, or fault found with Defendant's products or services

would negatively impact and seriously injure the reputation Brabus has established for its high-quality products and services offered under the Brabus "B" Design Mark.

69.     Defendant is liable for infringement of the federally registered Brabus "B" Design Mark in violation of 15 U.S.C. § 1125(a).

70.     Brabus has been and will continue to be irreparably injured by Defendant's conduct.  Brabus cannot be adequately compensated for these injuries by monetary remedies alone, and Brabus has no adequate remedy at law for Defendant's infringement of its rights.

## COUNT III

### (Trademark Dilution in Violation of N.Y. Gen. Bus. Law § 360-L)

71.     The allegations contained in paragraphs 1 through 70 are incorporated herein by reference.

72.     Brabus has continuously and extensively used the Brabus "B" Design Mark since at least as early as September 1998.

73.     Brabus owns a federal trademark registration for the Brabus "B" Design Mark, which registrations are valid, subsisting, incontestable and in full force and effect.

74.     The Brabus "B" Design Mark is commercially strong,  possesses a distinctive quality capable of dilution and is a world-renowned and widely recognized designation of the source of the Brabus's goods and services, including but not limited to motor vehicles, automobile parts, accessories and apparel.

75.     Due to Bollinger's use of a mark that is very similar to Brabus's mark, the Brabus "B" Design Mark may lose its ability to serve as a unique product and services identifier for Brabus.

ME1 27599030v.1

76.     Despite Bollinger's actual knowledge of its infringing use, it continues to use a mark that is very similar to Brabus's mark, thereby appropriating Brabus's goodwill that Brabus cultivated and created in the Brabus "B" Design Mark.

77.     Bollinger's actions thus deliberately and maliciously dilute the distinctive quality of the Brabus "B" Design Mark.

78.     Given the relatedness of the goods and services offered by Brabus and Bollinger, a mental association between the marks exists or is likely to exist in the minds of consumers. This suggested association blurs the distinction between the two companies in the public's mind.

79.     The use of a design mark that is very similar to Brabus's mark on goods and services that do not comport with the high standards of quality and other requirements of Brabus will cause dilution by tarnishment of the Brabus "B" Design Mark, thereby causing negative associations with the Brabus "B" Design Mark and eroding the goodwill and reputation symbolized thereby.

80.     Bollinger's acts constitute trademark dilution under New York law, including but not limited to, New York General Business Law § 360-L.

81.     As a direct and proximate result of Bollinger's conduct, Brabus has been harmed and will continue to suffer both immediate and irreparable harm as well as monetary damages. Brabus will continue to suffer harm unless the Court enjoins Bollinger from continuing to use its infringing mark.

## COUNT IV

### (Trademark Infringement in Violation of New York Common Law)

82.     The allegations contained in paragraphs 1 through 81 are incorporated herein by reference.

ME1 27599030v.1

83.    Brabus has obtained a federal registration for the Brabus "B" Design Mark, and has obtained common law trademark rights by its good faith use in New York State of its Brabus "B" Design Mark in connection with its goods and services since at least 1998.

84.    Based upon the actions described above, Bollinger has repeatedly infringed Brabus's common law trademark rights in its Brabus "B" Design Mark.  This infringement is likely to cause and/or causes consumer confusion, and Brabus is entitled to enforce its rights in its design mark to prevent such confusion and to prevent harm to its valuable brand.

85.    As a direct and proximate result of Bollinger's conduct, Brabus has been harmed and will continue to suffer both immediate and irreparable harm as well as monetary damages. Brabus will continue to suffer harm unless the Court enjoins Bollinger from continuing to use its infringing mark.

<u>**COUNT V**</u>

**(Unfair Competition in Violation of New York Common Law)**

86.    The allegations contained in paragraphs 1 through 85 are incorporated herein by reference.

87.    Brabus has built significant goodwill in its Brabus "B" Design Mark, by investing its labors, advertising and talent in promoting its brand and using the Brabus "B" Design Mark in a clear and conspicuous manner in connection with its high-quality goods and services.

88.    Through its use of very similar design mark, Bollinger has willfully appropriated the goodwill that Brabus has built in its brand and its mark.  Upon information and belief, Bollinger's misappropriation of Brabus's goodwill has been deliberate and in bad faith.

89.    At a minimum, by virtue of notice through the cease and desist letter, Bollinger became aware of the Brabus "B" Design Mark and the extensive goodwill and business reputation associated with the mark.  At the very least,  Bollinger's bad faith is reflected by its

16

election to use the Brabus "B" Design Mark despite this knowledge and despite the Examiner's finding of the existence of likelihood of confusion.

90.    Bollinger's acts have caused and/or are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Bollinger with Brabus, or as to the origin, sponsorship, or approval of Bollinger's goods and services by Brabus.

91.    With knowledge of Brabus's renown and distinction, Bollinger intended to trade, has traded, and upon information and belief, will continue to trade on the goodwill and brand recognition of the Brabus "B" Design Mark.

92.    Bollinger's acts are performed to the detriment and damage of Brabus and to the unjust enrichment of Bollinger.

93.    Bollinger's acts as described above constitute common law unfair competition under New York law, and have caused and will continue to cause impairment of the recognition of the Brabus "B" Design Mark, and diminution of the value thereof.

94.    As a direct and proximate result of Bollinger's conduct, Brabus has been harmed and will continue to suffer both immediate and irreparable harm as well as monetary damages. Brabus will continue to suffer harm unless the Court enjoins Bollinger from continuing to use its infringing mark.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brabus GmbH respectfully prays for the following relief against Defendant Bollinger Motors, LLC:

a)    An order declaring that Defendant's unauthorized use of the Bollinger "B" Design Mark violates the Lanham Act, 15 U.S.C. §§ 1114 and 1125;

17

b)     An order granting a preliminary and permanent injunction enjoining and restraining Defendant and those in active concert and participation with Defendant from:

    1.    Further infringing, and/or making any use of the Brabus "B" Design Mark, or any colorable imitations, including the Bollinger "B" Design Mark, to advertise, promote, display, sell, or offer any products and services in the automobile industry or any other industry in which Brabus operates;

    2.    Committing any acts calculated to cause consumers to believe that Bollinger's goods or services are affiliated with, sponsored by, licensed by, or otherwise associated with Brabus or the Brabus "B" Design Mark; and

    3.    Further diluting and infringing the Brabus "B" Design Mark and damaging Brabus's reputation and its goodwill in the Brabus "B" Design Mark;

    4.    Otherwise unfairly competing with Brabus;

c)     An order directing any other relief that the Court may deem appropriate to prevent the public from deriving any erroneous impression that any goods or services by Defendant are authorized by Brabus or are in any way related to Brabus or its goods and services;

d)     An order directing an accounting and judgment be rendered against Defendant for:

    1.    All profits received by Defendant as a result of Defendant's unlawful actions alleged herein, actual damages, and enhanced damages as permitted by law; and

2.  A award of treble damages to Brabus for Defendant's willful and deliberate conduct, pursuant to 15 U.S.C. § 1117; and

3.  An award to Brabus of costs, including reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. §§ 1114 and 1117; and

e)  Any other relief that the Court finds warranted and just.

## JURY DEMAND

Plaintiff Brabus GmbH requests a jury trial on all issues so triable.


Dated:  September 10, 2018                MCCARTER & ENGLISH, LLP

                                          /s/James A. Kellar
                                          James A. Kellar
                                          Michael R. Friscia (*pro hac vice* to be applied)
                                          Olga Ugolev (*pro hac vice* to be applied)
                                          Four Gateway Center
                                          100 Mulberry Street
                                          Newark, New Jersey
                                          Tel:  (973) 622-4444
                                          Fax:  (973) 624-7070
                                          jkellar@mccarter.com
                                          mfriscia@mccarter.com
                                          ougolev@mccarter.com

                                          *Attorneys for Plaintiff*
                                          *Brabus GmbH*